**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KHALIL PATRICK,<br><br>        Plaintiff,<br><br>    v.<br><br>NEW JERSEY STATE PRISON, *et al.*,<br><br>        Defendants. | Civil Action No. 18-17324 (GC) (JTQ)<br><br>**OPINION** |

**CASTNER, District Judge**

   **THIS MATTER** comes before the Court on the third motion to dismiss *pro se* Plaintiff Khalil Patrick's amended complaint (*see* ECF No. 24 ("Amended Complaint" or "Am. Compl.")) filed by Defendants New Jersey Department of Corrections ("NJDOC"), New Jersey State Prison ("NJSP"), Sgt. Samosuk, SCO Smalls, Lt. Bundy, Sgt. Adams, Sgt. Patoe, and SCO Mandap ("Moving Defendants").[1]  (ECF No. 49 ("Third Motion to Dismiss").)  Plaintiff has not filed any opposition to the Third Motion to Dismiss.  The Court has carefully considered the Amended Complaint and the submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, the Third Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

---

[1]    Samosuk, Smalls, Bundy, Adams, Patoe, and Mandap are referred to as the "Individual Moving Defendants."

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Amended Complaint's Allegations

In his Amended Complaint, Plaintiff, a prisoner incarcerated at NJSP in Trenton, New Jersey, alleges several incidents of unlawful conduct from 2017 through 2019.[2]

Initially, Plaintiff claims that, on June 16, 2017, Defendant SCO Collins treated him differently from other similarly situated inmates by refusing to process his job change form and instructing Defendants Lt. Kennedy, SCO Rodriguez, Sgt. Mendoza, and Samosuk not to process the form. (Am. Compl. ¶ 25.) Citing to the Equal Protection Clause of the Fourteenth Amendment, Plaintiff asserts that Kennedy, Rodriguez, Mendoza, Samosuk, Collins, and Defendants Gary Lanigan and Steve Johnson entered into a conspiracy to intentionally discriminate against Plaintiff on the basis of race; Kennedy, Rodriguez, Mendoza, Samosuk, and Collins lacked a rational basis for the disparate treatment of his job change form; and Lanigan, Johnson, Rodriguez, Mendoza, and Samosuk failed to enforce policies to prevent Collins from retaliating against him for exercising his First Amendment right to file a grievance regarding the equal protection violations. (*Id.* ¶¶ 26-29, 33-34.) Specifically, Plaintiff told Kennedy, Samosuk, and Mendoza that Collins "called [him] a [n*****r] and threaten[ed] to have [him] transferred off the unit if [he] filed another grievance when [he] spoke to them in person." (*Id.* ¶ 41.) He further told Kennedy, Samosuk, Mendoza, Collins, and Rodriguez that, although being allowed to work is a privilege, the right to fill out a job change request is protected by the Fourteenth Amendment's guarantee that similarly situated persons be treated alike. (*Id.* ¶ 43.) On July 19, 2017, Samosuk claimed to deny Plaintiff's job request due to his recent disciplinary infractions. (*Id.* ¶ 45.) Plaintiff responded on the same

---

[2]    In its summary of Plaintiff's factual allegations, the Court focuses on the allegations specifically naming the Moving Defendants. Allegations regarding other Defendants, who have not yet been served and have not moved to dismiss, are included when necessary to provide the appropriate context.

day by stating that he was not permitted to put in a job change request and had been "charge free 6 months and been on [his] current job for at least 60 days." (*Id.*) He mailed correspondence to the ombudsman regarding the actions of Collins, Rodriguez, Samosuk, Mendoza, and Kennedy, "who desired to punish him for exercise of constitutional right protected [u]nder [the] Equal Protection Clause." (*Id.* ¶ 52.)

On or about October 16, 2017, between 11:30 a.m. and noon, Smalls and Defendant Sgt. Goble ordered Plaintiff to submit to a strip search, which he did, and, once the search was completed, he was ordered to leave his cell and housing unit under escort. (*Id.* ¶¶ 53-54.) Plaintiff began dressing and attempted to put on his medically prescribed knee braces, telling Goble, Smalls, and Defendant SCO Hampton that the knee braces were needed to assist him in walking because his knees were swollen and he was in pain. (*Id.* ¶ 55.) Goble, who was in charge of the search, ignored Plaintiff's pleas, despite Smalls informing Goble that Plaintiff had a pass for the knee braces and that he patted and frisked Plaintiff every day because the braces set off the metal detector. (*Id.* ¶ 56.) Plaintiff was then escorted to, and provided, urine samples for a drug. (*Id.* ¶¶ 57-62.) Adams, "the sister of the victim in the criminal case which the Plaintiff is currently serving a sentence of 55 years with an 85 percent parole disqualifier," was the correctional officer who ordered him to provide the sample. (*Id.*)

After the urine samples were taken, Kennedy and Bundy, "through Defendant Adams," ordered Plaintiff to report to a new housing unit (Unit 4-Left). (*Id.* ¶ 63.) "Plaintiff then informed Defendant Adams that he had a medical pass requiring that he be given a lower bunk only and that he can only be housed on the flats (bottom floor of the housing unit)." (*Id.* ¶ 65.) Adams threatened Plaintiff that he would be placed in prehearing detention ("PHD") and given an institutional charge for refusing to report to his new assigned housing unit. (*Id.*) Plaintiff reported to his new unit and

proceeded to climb the "steep staircase" to reach the cell area. (*Id.* ¶ 66.) "When Plaintiff reached the top of the stairs, his knees locked up causing him to fall down the flight of stairs." (*Id.*)

Plaintiff allegedly sustained significant injuries, and a Code 53 medical emergency was called. (*Id.* ¶ 67.) Lying on the floor when medical personnel arrived, he was taken in a wheelchair to the clinic and was treated with Band-Aids and Bacitracin for abrasions on the lower left leg and ankle. (*Id.* ¶¶ 67-68.) Plaintiff also had pain in the back of his head, lower back, and both knees. (*Id.* ¶ 68.) "The clinic nurse informed prison personnel that Plaintiff has a lower bunk order and flats only and that he should be moved to a cell that conforms to the medical order." (*Id.* ¶ 69.) Once medically cleared, he was relocated to a different unit (Unit 4-Right). (*Id.* ¶ 70.)

Between 7:30 a.m. and 8:00 a.m., on or about October 17, 2017, Collins informed Plaintiff that Kennedy had ordered his transfer to another unit in a different compound (Unit 3-FF in the South Compound). (*Id.* ¶ 71.) Plaintiff responded that his property was already packed but that he needed help to move the property and the wheelchair because he was in extreme pain from his fall down the stairs and was unable to stand or walk on his own. (*Id.* ¶ 72.) He did not refuse Collins's orders. (*Id.*) Samosuk then ordered Plaintiff to step out of his cell or he would be extracted. (*Id.* ¶ 73.) Plaintiff, with the assistance of another inmate (Samuel James) complied with the order. (*Id.*) Plaintiff was taken to the clinic and then to 7-Left Administrative Segregation unit and was ordered to submit a urine sample within two hours by Mandap, which Plaintiff provided. (*Id.* ¶¶ 74-75.) "Mandap stated to Defendant Patoe that Plaintiff submitted the urine sample and Mandap told Patoe [sic] that Patoe wanted to be present." (*Id.* ¶ 75.) Plaintiff said he was ready to submit the sample, and Patoe came into the cell, "at which time Plaintiff feared for his safety after hearing Defendants exchange of words and knowing that in a close custody unit he must be handcuffed at all times." (*Id.* ¶ 77.) "He feared further retaliation by being set up or

assaulted and informed the Defendants he did not have to urinate out of fear to get them out of the cell." (*Id.*)

On or about January 21, 2018, at approximately 10:40 a.m., Plaintiff took a shower in the shower area of the 7-Wing Administrative Segregation housing unit. (*Id.* ¶ 78.) Defendant Lt. Clermont, Patoe, and Defendant SCO Jovanovich forced him to use a milk crate as a medical shower chair. (*Id.* ¶ 79.) The milk crate collapsed, causing Plaintiff to fall face first into the shower floor and knocking him unconscious. (*Id.* ¶ 80.) Darrell Crone, who saw the milk crate that the officers placed in the shower every day was "near-by-bent," alerted Defendant SCO Vaclavicek. (*Id.*) Vaclavicek called a Code 53, and Plaintiff was taken to the clinic. (*Id.* ¶¶ 80-81.) He had a major head contusion, concussion, back pain, neck pain, and knee pain. (*Id.* ¶ 82.)

Plaintiff indicates that he submitted a Notice of Tort Claim under the New Jersey Tort Claims Act ("NJCTA") in April 2018. (*Id.* ¶ 83.) On June 24, 2018, Bundy responded to Plaintiff's inquiry regarding the number of barbers allowed on 2-Left (his housing unit at the time). (*Id.* ¶¶ 86-87.) Bundy wrote that four barbers were allowed on 2-Left as well as four barbers on 2-Right, there were currently four barbers assigned on 2-Left, and there were two barbers on 2-Right. (*Id.* ¶ 87.) Plaintiff responded that 2-Left only had two assigned barbers, he had submitted a job change form for the 2-Left barber position, but that he had no problem relocating to 2-Right if there was an opening there. (*Id.* ¶ 88.) According to Plaintiff, Bundy and Mendoza conspired to provide him with fraudulent information to relax his vigilance or mislead him with the intent to frustrate his attempt to seek employment as a barber and to punish him for pursuing an administrative grievance regarding Collins and filing a Notice of Tort Claim. (*Id.* ¶ 91.) Bundy had Plaintiff transferred on July 16, 2018 to punish him for filing a grievance "in connection to

this Civil Action that is ripe before the Court." (*Id.* ¶ 97.) "[T]ransferring me would take my job and intimidate me from going forward with the lawsuit." (*Id.* (citations omitted)).

The Amended Complaint alleges eleven counts: (1) "New Jersey Civil Rights [Act] [( NJCRA")] <u>N.J.S.A.</u> 10:6-2(d) And/Or Title 42 Section 1983;" (2) "Deliberate Indifference;" (3) "[United] States Rehabilitation Act [("RA")] And/Or Americans with Disabilities Act [("ADA")];" (4) "Negligence;" (5) "Conspiracy;" (6) "State Infliction of Emotional Distress;" (7) "State Constitutional Claims;" (8) "Federal Constitutional Tort;" (9) "State Constitutional Tort And/Or New Jersey Tort Claims Act;" (10) "Cruel and Unusual Punishment;" and (11) "Punitive Damages." (*Id.* at 21-37.) Plaintiff requests judgment against each Defendant, in their individual and official capacities, jointly and severally, including punitive damages, and the cost of the action, including reasonable counsel fees. (*Id.* at 37-38.)

## B. The Procedural History

Plaintiff filed his original complaint on October 18, 2018, in the Superior Court of New Jersey, Mercer County. (*See* ECF No. 1-1.) On or about December 18, 2020, NJSP, NJDOC, Bundy, Adams, Patoe, and Mandap filed a notice of removal. (ECF No. 1.)

After receiving two extensions of time to answer, NJSP, NJDOC, Bundy, Adams, Patoe, and Mandap filed a motion to dismiss on March 6, 2019. (ECF Nos. 2-5.) Plaintiff subsequently obtained multiple extensions of time to submit his response. (ECF Nos. 9-20.) On November 20, 2019, Plaintiff's motion for leave to file an amended complaint and his response to the motion to dismiss were docketed. (ECF Nos. 21-22.) On June 23, 2020, the Honorable Freda L. Wolfson

granted the unopposed motion for leave to amend and denied the motion to dismiss as moot. (ECF No. 23.)

"The Amended Complaint reasserts claims against Defendants Lt. Bundy, Sgt. Adams, Sgt. Patoe, and SCO Mandap but deletes NJDOC and NJSP from the caption." *Patrick v. N.J. State Prison*, No. 18-17324, 2023 WL 8878101, at *1 n.2 (D.N.J. Dec. 22, 2023) (citing Am. Compl. at 1). As to the unserved Defendants, Plaintiff has named Lanigan, Johnson, Kennedy, and Collins in both the original complaint and his Amended Complaint. *Id.* "Plaintiff adds Lt. Clermont, Sgt. Mendoza, Sgt. Besley, Sgt. Goble, Sgt. Samosuk, SCO Smalls, SCO Hampton, SCO Rodriguez, SCO Vaclavicek, SCO Esquiltin, SCO Goodwin, and SCO Jovanovich in his Amended Complaint. The individual Defendants are sued in their official and individual capacities." *Id.* (citing Am. Compl. at 1, ¶¶ 4-23). Samosuk and Smalls were subsequently served.

In July 2020, the Deputy Attorney General informed then-Chief Judge Wolfson that the Office of the Attorney General was engaged in the process of determining representation for the various individual Defendants and how to move forward in this matter. (ECF No. 26.) On August 24, 2020, the Attorney General provided the work addresses for ten unserved Defendants. (ECF No. 28.) On January 31, 2023, Chief Judge Wolfson granted Plaintiff's application to proceed *in forma pauperis* to permit him to obtain service and directed the Attorney General to notify the Magistrate Judge in writing as to whether it intended to waive service and represent any unserved Defendants. *See Patrick v. N.J. State Prison*, No. 18-17324, 2023 WL 1420444 (D.N.J. Jan. 31, 2023). On the same day, the matter was assigned to the undersigned.

On May 10, 2023, the Deputy Attorney General sought an extension of time to file another motion to dismiss, which was granted. (ECF Nos. 34-35.) A motion to dismiss the Amended Complaint was filed by NJSP, NJDOC, Bundy, Adams, Patoe, and Mandap on May 24, 2023.

(ECF No. 36.) On December 22, 2023, the Court administratively terminated this second motion to dismiss and directed the Attorney General to respond to the Court's January 31, 2023 Order and clarify whether it intended to waive service and represent some or all of the sixteen unserved Defendants. *Patrick*, 2023 WL 8878101, at *3. In turn, the Court ordered that any new motion to dismiss shall address whether Plaintiff states a claim for relief under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and /or the Eighth Amendment against any of the relevant Defendants in light of *Durham v. Kelley*, 82 F.4th 217 (3d Cir. 2023). *Patrick*, 2023 WL 8878101, at *3. The Attorney General was also ordered to serve copies of its new motion to dismiss or supplemental briefing on Plaintiff at the address on file. *Id.* Upon receipt of the new motion to dismiss or supplemental briefing, Plaintiff was permitted to submit an opposition brief within 30 days and was advised that his failure to do so may result in the Court considering the motion to dismiss as unopposed. *Id.*

After obtaining two extensions of time to file the status update, the Attorney General submitted a letter on February 23, 2024. (ECF Nos. 39-43.) On April 19, 2024, the Court entered a text order noting that the Office of the Attorney General has advised that it will accept service of process on behalf of one Defendant but cannot waive service as to the remaining Defendants. (ECF No. 44.) The Office of the Attorney General was provided 30 days to either file a new motion to dismiss addressing the applicability of *Durham* or to answer or otherwise respond to the Amended Complaint. (*Id.*) On May 22, 2024, based on a letter received from the Attorney General dated May 20, 2024 (ECF No. 45), the Court directed the Moving Defendants to file a new motion to dismiss with the modifications outlined in the letter (i.e., Samosuk and Smalls joining the motion to dismiss and changes to reflect the Third Circuit's decision in *Durham*) on or before May 31,

2024. (ECF No. 46.) The Court stated that subsequent deadlines shall be in accordance with the Federal Rules of Civil Procedure and Local Civil Rules. (*Id.*)

On June 3, 2024, the Moving Defendants filed their Third Motion to Dismiss together with a letter seeking its acceptance as within time. (ECF Nos. 49-50.) On June 5, 2024, the Court granted the Moving Defendants' letter request and stated that Plaintiff's opposition papers were due on or before June 17, 2024, and the Moving Defendants' reply was due on or before June 24, 2024. (ECF No. 51.) Plaintiff has not responded to the Third Motion to Dismiss.

## II.    **STANDARD OF REVIEW**

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)).

The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

9

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Because Plaintiff is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (noting that courts must remain flexible, especially when dealing with imprisoned *pro se* litigants). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

In its decision administratively terminating the second motion to dismiss, the Court noted that Plaintiff had not filed an opposition brief to the prior motion, the Attorney General filed a certificate of service, and there was no indication that Plaintiff did not receive a copy of the second motion. *Patrick*, 2023 WL 8878101, at *3. The Court ordered Plaintiff to submit an opposition brief within 30 days of receipt of a new motion to dismiss and provided notice that his failure to do so may result in the Court considering the motion to dismiss as unopposed. *Id.* Plaintiff has not filed an opposition brief to the Third Motion to Dismiss. The Moving Defendants have provided a certificate of service (ECF No. 49-4), and there is no indication that Plaintiff did not receive a copy of the Moving Defendants' Third Motion to Dismiss. Under the circumstances, the Court treats the Third Motion to Dismiss as unopposed. However, given Plaintiff's *pro se* status, the Court will undertake its own independent analysis of the merits of the Moving Defendants' arguments and the sufficiency of Plaintiff's allegations. *See Est. of Messina v. Bank of N.Y. Mellon*, No. 23-104, 2024 WL 4444560, at *4 (D.N.J. Oct. 8, 2024).

## III.   **DISCUSSION**

The Moving Defendants seek the dismissal of the following claims: (1) the Section 1983 and NJCRA claims in Counts One, Two, Three, Five, Seven, Eight, Nine, and Ten against NJDOC, NJSP, and the Moving Individual Defendants named in their official capacity; (2) the ADA and RA claims in Count Three against the Moving Individual Defendants in their individual capacities; (3) the Section 1983, NJTCA and NJCRA conspiracy claims in Count Five; (4) the intentional infliction of emotional distress claim in Count Six; (5) the state and federal constitutional claims in Counts Seven, Eight, and Nine; and (6) the claims in Counts One, Two, Three, Five, Seven, Eight, Nine, and Ten against the Moving Individual Defendants. (ECF No. 49-1 at 9-32.)

### A. **Persons Amendable to Suit under Section 1983 and the NJCRA**

The Moving Defendants argue that any Section 1983 and NJCRA claims brought against NJDOC, NJSP, and the Individual Moving Defendants in their official capacity should be dismissed because they are not "persons" who may be held liable under Section 1983 or the NJCRA. (ECF No. 49-1 at 9-13.) The Court concludes that NJDOC and NJSP and, to the extent that Plaintiff brings official-capacity claims for damages, the Individual Moving Defendants are not amendable to suit under either the federal or state statute. However, the Individual Moving Defendants are "persons" under Section 1983 and the NJCRA for purposes of any official-capacity claims for prospective relief.

Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or

> omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Accordingly, a plaintiff must establish: (1) that one of his rights secured by the Constitution or laws of the United States was violated; and (2) that this violation was caused or committed by a "person" acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the Supreme Court held that "[n]either a state nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different than a suit against the State itself." *Id.* (citations omitted). However, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Id.* at 71 n.10 (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985); *Ex parte Young,* 209 U.S. 123, 159-60 (1908)). Thus, a cause of action under Section 1983 cannot be asserted against the state, its agencies, such as NJDOC and NJSP, or, to the extent that the plaintiff seeks damages, its officials acting in their official capacities. *See id* at 71 & n.10; *Winters v. Valleau*, No. 19-19817, 2024 WL 3159319, at *3 (D.N.J. June 25, 2024); *Landi v. Borough of Seaside Park*, No. 07-5319, 2009 WL 606141, at *6 (D.N.J. Mar. 9, 2009).

"Furthermore, the NJCRA is modeled after § 1983, and the same "person" restriction applies. *Didiano v. Balicki*, 488 F. App'x 634, 638-39 (3d Cir. 2012)." *Scott v. Kuhn*, No. 23-3361, 2024 WL 22207, at *2 (D.N.J. Jan. 2, 2024); *see also Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 856 (3d Cir. 2014) ("Likewise, the NJCRA "premise[s] liability

on the conduct of a 'person.'" (quoting *Lopez-Siguenza v. Roddy*, No. 13-2005, 2014 WL 1298300, at *7 (D.N.J. Mar. 31, 2014))).

Accordingly, the Court dismisses with prejudice Plaintiff's Section 1983 and NJCRA claims in Counts One, Two, Three, Five, Seven, Eight, Nine, and Ten against NJDOC and NJSP.[3] It further dismisses with prejudice Plaintiff's Section 1983 and NJCRA official-capacity claims for damages against the Individual Moving Defendants. However, the Moving Defendants do not acknowledge that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983," *Will*, 491 U.S. at 71 n.10 (citations omitted). They likewise do not address whether Plaintiff asserts any claim for prospective relief in his Amended Complaint. In his prayer for relief, Plaintiff demands judgment against each Defendant, "in their individual and official capacities, as may be appropriate, jointly and severally and in the alternative, or such of them as may be determined to be liable under the premises [sic], including, but not limited to, punitive damages." (Am. Compl. at 37.) The Court denies the Second Motion to Dismiss to the extent that the Moving Defendants ask this Court to dismiss any Section 1983 and NJCRA official-capacity claim for prospective relief against the Individual Moving Defendants in Counts One, Two, Three, Five, Seven, Eight, Nine, and Ten on the grounds that the Individual Moving Defendants are not amendable to suit.

---

[3]   "The Amended Complaint . . . deletes NJDOC and NJSP from the caption," *Patrick*, 2023 WL 8878101, at *1 n.2 (citing Am. Compl. at 1), and the two entities are not identified as Defendants in the body of the Amended Complaint. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) (stating that amended pleading generally supersedes original pleading and renders it a nullity). Because they are listed on the docket, have been served, and seek the dismissal of the claims against them, the Court dismisses the Section 1983 and NJCRA claims against NJDOC and NJSP with prejudice.

## B. The ADA and RA Claims

The Moving Defendants ask the Court to dismiss Plaintiff's ADA and RA claims against the Individual Moving Defendants on the grounds that neither statute provides for individual liability. (ECF No. 49-1 at 15.) "Claims brought under the ADA and RA may only proceed against specific officials and entities. State officials sued in their individual capacities cannot be sued under Title II of the ADA or the RA."[4] *Gray v. Kuhn*, No. 23-846, 2024 WL 4719568, at *6 (D.N.J. Nov. 8, 2024) (citing *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002); *Matthews v. Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015)). Accordingly, the Plaintiff's ADA and RA individual-capacity claims in Count Three against the Individual Moving Defendants are dismissed with prejudice.

## C. Conspiracy Claims under Section 1983 and New Jersey Law

The Moving Defendants note that, in Count Five, Plaintiff alleges that "the individual State Defendants conspired to 'deny proper health care, deprive Plaintiff of his health, deprive Plaintiff of his dignity and to embarrass him, and/or harm Plaintiff in violation of 42 U.S.C. § 1983, the NJCRA, and NJTCA." (ECF No. 49-1 at 16-17 (quoting Am. Compl. ¶ 155).) They argue that Plaintiff fails to state a claim under either §1983 or state law because he does not allege facts to support his conclusory assertions of a conspiracy. (*Id.* at 16-21.) The Court agrees.

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding" to deprive him of his constitutional rights."

---

[4]    In contrast, "state officers [and state entities] *can* be sued for damages in their official capacities for purposes of the ADA and RA, unless barred by the Eleventh Amendment." *Durham*, 82 F.4th at 224 (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)); *see also Gray*, 2024 WL 4719568, at *6. In *Durham*, the Third Circuit explained that sovereign immunity did not bar a claim for money damages under the RA. *Durham*, 82 F.4th at 227. In turn, because "[the Third Circuit] held . . . that [the prisoner] has properly pleaded his Eighth Amendment deliberate indifference claims, his parallel [ADA] claims for money damages" may proceed." *Id.* at 229.

14

*Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). The elements of a §1983 conspiracy are: (1) two or more person conspire to deprive a person of constitutional rights; (2) one or more of the conspirators perform any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff is his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States. *Id.* at 294 n.15 (further noting that conspirators must act under the color of state law). Plaintiff must allege a "factual basis to support the existence of a conspiracy, including agreement and concerted action," and "[t]o establish agreement, a plaintiff must show that the defendants reached an understanding to deny Plaintiff of his rights, which can be shown by circumstantial evidence." *Cuff v. Zee*, No. 23-22823, 2024 WL 5074728, at *7 (D.N.J. Dec. 10, 2024) (citing *Jutroswski*, 904 F.3d at 293-95). A factually unsupported allegation of conspiracy constitutes a legal conclusion that is insufficient to state a plausible claim. *See Ross v. Graf*, No. 19-20534, 2021 WL 4452651, at *3 (D.N.J. Sept. 28, 2021). "[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy will be deemed sufficient." *Id.* (alteration in original) (quoting *Grigsby v. Kane*, F. Supp. 2d 453, 458 (M.D. Pa. 2003)).

The elements of a claim of conspiracy to violate civil rights under New Jersey law are essentially the same as the elements of a conspiracy to violate federal civil rights. *Jutrowski*, 904 F.3d at 294 n.15. "In New Jersey . . . the principal element of [civil conspiracy] is agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Banco Popular N.A. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005) (alteration added) (quoting *Morgan v. Union Cnty. Bd. of Chosen Freeholders*, 633 A.2d 985 (N.J. Super. Ct. App.

Div. 1993)).  Thus, the resolution of Plaintiff's federal conspiracy claims "dictates our disposition of his state conspiracy claims." *Jutrowski*, 904 F.3d at 294 n.15.

Plaintiff fails to plead adequate factual content allowing the Court to draw the reasonable inference that the Moving Defendants entered into an agreement to violate his constitutional rights. *See Clark*, 55 F.4th at 178.  Instead, Count Five merely consists of conclusory assertions.  *See Wilson*, 57 F.4th at 140 (stating that courts must disregard legal conclusions and recitals of the elements of the cause of action that are supported merely by conclusory statements).  For instance, Plaintiff alleges that the twenty-one individual Defendants he named in his Amended Complaint conspired to deprive Plaintiff of his health, peace of mind, and proper care, and/or conspired to retaliate against Plaintiff. (Am. Compl. ¶ 155; *see also id.* ¶ 156 (similarly alleging that Defendants conspired to knowingly deny proper care and to deprive Plaintiff of his health, dignity, and to embarrass him).)  In the "Factual Allegations" section of his Amended Complaint, Plaintiff claims that Kennedy, Rodriguez, Mendoza, and Samosuk entered into a conspiracy with Collins to intentionally discriminate against Plaintiff on the basis of race. (*Id.* ¶ 26.)  Bundy and Mendoza also allegedly conspired to provide him with fraudulent information to relax his vigilance or mislead him with the intent to frustrate his attempt to seek employment as a barber and to punish him for pursuing an administrative grievance regarding Collins and filing a Notice of Tort Claim. (*Id.* ¶ 91.)  However, Plaintiff fails to provide "particularized factual support" for his bald "conspiracy" allegations. *Ross*, 2021 WL 4452651, at *3 (citation omitted).  Specifically, Plaintiff does not "articulate how, where, or when the Defendants entered into the conspiracy [and] does not allege the period of the conspiracy." *Id.* (citation omitted).

Accordingly, the Court dismisses the conspiracy claims against the Moving Defendants in Count Five without prejudice.

## D.  Intentional Infliction of Emotional Distress

The Moving Defendants assert that Count Six should be dismissed because Plaintiff fails to state a claim for intentional infliction of emotional distress.  (ECF No. 49-1 at 21.)  A claim of intentional infliction of emotional distress under New Jersey law requires the plaintiff to show that: (1) the defendant acted intentionally; (2) the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;" (3) the defendant's actions proximately caused the plaintiff emotional distress; and (4) the emotional distress was "so severe that no reasonable [person] could be expected to endure it." *Segal v. Lynch*, 993 A.2d 1229, 1241-42 (N.J. Super. Ct. App. Div. 2010) (alteration in original) (quoting *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857 (N.J. 1988)).

The Moving Defendants state in passing that Plaintiff fails to allege facts to establish that they acted intentionally or recklessly.  (ECF No. 49-1 at 22.)  But they recognize that, like an Eighth Amendment claim, a claim for intentional infliction of emotional distress may proceed where the defendant acts "recklessly in deliberate disregard of a high degree of probability that emotional distress will follow."[5]  (*Id.* (quoting *Buckley*, 544 A.2d at 863).)  Plaintiff adequately alleges specific facts of such deliberate disregard.  For example, Adams, after Plaintiff informed the sergeant that "he had a medical pass requiring that he be given a lower bunk only and that he can only be housed on the flats (bottom floor of the housing unit)," told Plaintiff he would be placed in prehearing detention and given an institutional charge if he did not immediately proceed to his newly assigned housing unit.  (Am. Compl. ¶¶ 64-65.)  He then proceeded to climb the steep staircase to reach his cell, his knees locked up, which caused him to fall down the flight of stairs,

---

[5]    The Moving Defendants do not move for dismissal of Plaintiff's Eighth Amendment claims.  (*See* ECF No. 49-1 at 32 n.6.)

and, as a result, he was taken to the prison clinic in a wheelchair, suffered pain in the back of his head, lower back and knees, and was treated for abrasions in the lower left leg and ankle. (*Id.* ¶¶ 66-69.) Under the circumstances, the Court cannot conclude that the Moving Defendants satisfy their burden of showing that the Amended Complaint fails to satisfy the recklessness element. *See Plavix Mktg., Sales Pracs. & Prod. Liab. Litig.*, 974 F.3d at 231 (stating that defendant moving to dismiss under Rule 12(b)(6) has the burden to show that the complaint fails to state a claim).

However, the Court agrees with the Moving Defendants that Plaintiff "fails to allege any facts to demonstrate that he suffered the requisite degree of emotional distress to state a claim under *Buckley*." (ECF No. 49-1 at 22.) Plaintiff's allegations that the Individual Moving Defendants "intentionally inflicted emotional distress upon Plaintiff by engaging in a calculated extreme course of conduct intending to cause extreme emotional distress," that their actions were designed to inflict severe emotional distress, and that Plaintiff has been damaged and will continue to be damaged as a result must be disregarded as, at best, merely conclusory recitals of the elements of his claim (Am. Compl. ¶¶ 164-66). *See Wilson*, 57 F.4th at 140. While Plaintiff alleges that he suffered various physical injuries (such as loss of consciousness and a concussion as a result of the milk crate collapsing in the shower) and pain because of the alleged misconduct (Am. Compl. ¶¶ 68, 80-82), he does not allege facts plausibly indicating that his emotional distress was "sufficiently substantial to result in physical illness or serious psychological sequelae." *Aly v. Garcia*, 754 A.2d 1232, 1236-37 (N.J. Super. Ct. App. Div. 2000) (citations omitted); *see also Moreau v. Walgreen Co.*, 387 F. App'x 202, 204 (3d Cir. 2010) (per curiam) ("Here, the District Court noted that Moreau merely complained of embarrassment, humiliation, anger, anxiety, and lack of sleep, which are not sufficiently severe to support a cause of action under New Jersey law.").

Accordingly, the Court dismisses the intentional infliction of emotional distress claim in Count Six against the Moving Defendants without prejudice.

### E. Plaintiff's State and Federal Constitutional Claims in Counts Seven, Eight, and Nine

The Moving Defendants argue that the Court should dismiss the state and federal constitutional claims alleged in Counts Seven, Eight, and Nine, except for the claims based on the Eighth Amendment. (ECF No. 49-1 at 23.)

In Count Eight, Plaintiff alleges, *inter alia*, that the Individual Moving Defendants infringed his rights guaranteed by the Fifth, Sixth, and Fourteenth Amendments. (Am. Compl. ¶¶ 177-78.) It is well established that the Fifth Amendment "only applies to federal officials." *Bergdoll v. City of York* 515 F. App'x 165, 170 (3d Cir. 2013) (citing *Nguyen v. U.S. Cath. Conference,* 719 F.2d 52, 54 (3d Cir.1983)). Because none of the Individual Moving Defendants are federal officials, they may not be held liable for violating the Fifth Amendment. The Sixth Amendment identifies basic rights that the accused shall enjoy in "all criminal prosecutions," but there are no allegations in the Amended Complaint regarding a criminal prosecution. U.S. Const. amend. VI.

With respect to his Fourteenth Amendment claim, "the Supreme Court has held that when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268-69 (3d Cir. 2000) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842-43 (1998)). To the extent that Plaintiff's substantive due process claim is based on the same alleged facts that serve as the basis for his Eighth Amendment claims, the Court concludes that the Fourteenth Amendment claim should be dismissed. *See Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 260 (3d Cir. 2010) (stating that, under "more-specific provision rule," constitutional claim covered by specific provision such as Eighth Amendment

19

must be analyzed "under the standard appropriate to that specific provision, not under the rubric of substantive due process" (quoting *United States v. Lanier*, 520 U.S. 259, 272 n. 2 (1997))).

Furthermore, in Count Seven, Plaintiff claims that the illegal and unconstitutional acts, customs, and policies of the Individual Moving Defendants "violate the constitutional rights of Plaintiff as enumerated in the Constitution of the State of New Jersey." (Am. Compl. ¶ 171.) Similarly, he alleges under Count Nine that such actions "violate the constitutional rights of Plaintiff as enumerated in the Constitution of the State of New Jersey, giving rise to a common law tort action and/or violated the New Jersey Tort Claims act." (*Id.* ¶ 183.) According to the Moving Defendants, "Plaintiff fails to explain what state or federal constitutional rights he believes Defendants violated" and has "therefore failed to state a plausible claim for relief in either of these Counts." (ECF No. 49-1 at 25) (citing Am. Compl. ¶¶ 171, 183; *Iqbal*, 566 U.S. at 678).

Plaintiff does not identify the specific state constitutional provisions allegedly violated by the Individual Moving Defendants. "Nonetheless, the Third Circuit instructs district courts to liberally construe pro se complaints. *See, e.g., Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247-48 (3d Cir.1999) (liberally reading pro se plaintiff's pleadings and applying 'the applicable law, irrespective of whether [the litigant] mentioned it by name')." *Pinet v. United States*, No. 07-5678, 2010 WL 503022, at *1 (D.N.J. Feb. 8, 2010). At the very least, Plaintiff pleads a claim of unconstitutional conditions of confinement under Article I, Section 12 of the New Jersey Constitution relying on "the same facts that serve [as] the basis for his [analogous conditions of confinement] claims under the Eighth Amendment" (ECF No. 49-1 at 24 (citing Am. Compl. ¶¶ 124-30)). (*See also* Am. Compl. ¶¶ 63-70 (alleging circumstances leading to his fall down the stairs and resulting injuries), 79-82 (describing milk crate incident), 112-19 (alleging *inter alia* failure to provide adequate care violating Plaintiff's civil rights under the color of State law in

violation of the NJCRA)); *Conte v. Goodwin*, No. 19-8333, 2021 WL 141337, at *7 (D.N.J. Jan. 15, 2021) ("Article I Section 12 prohibits cruel and unusual punishment and is interpreted analogously to the Eighth Amendment. *See Szemple v. Corr. Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012)."). Given Plaintiff's allegations and his *pro se* status, the Moving Defendants do not meet their burden to establish that Plaintiff fails to state a plausible claim for relief in Counts Seven and Nine.

Accordingly, the Court dismisses without prejudice Plaintiff's Fifth, Sixth, and, to the extent they are based on the same conduct implicated in his Eighth Amendment claims, the Fourteenth Amendment substantive due process claims in Count Eight against the Individual Moving Defendants in their official capacities for prospective relief and in their individual capacities. The Moving Defendants' Third Motion to Dismiss is denied as to Counts Seven and Nine.

### F. Qualified Immunity

The Moving Defendants argue that the individual-capacity claims in Counts One, Two, Three, Five, Seven, Eight, Nine, and Ten should be dismissed because the Individual Moving Defendants are entitled to qualified immunity. (ECF No. 49-1 at 26-31.) Specifically, they claim that "Plaintiff fails to allege facts to show that the individual State Defendants engaged in any conduct that violated clearly established law." (*Id.* at 26.) Purportedly, "[b]ecause the Amended Complaint does not set forth a prima facie violation of Plaintiff's constitutional rights at the hands of individual State Defendants, and because no violation of clearly established law is alleged," the individual-capacity claims in the aforementioned counts should be dismissed. (*Id.* at 31.) However, the Moving Defendants emphasize that they are *not* "seeking Qualified Immunity for the claims brought pursuant to the Eighth Amendment." (*Id.* at 26.)

"At the motion-to-dismiss stage, courts evaluate qualified immunity for a constitutional claim by examining (i) whether the complaint contains plausible allegations of a constitutional violation and (ii) whether the asserted constitutional right is clearly established." *Karkalas v. Marks*, 845 F. App'x 114, 118 (3d Cir. 2021) (citing *Wood v. Moss*, 572 U.S. 744, 757 (2014)). The questions may be answered in either order. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). Qualified immunity aims to resolve "insubstantial claims" against government officials prior to discovery. *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982)). "The defendant official has the burden to establish they are entitled to qualified immunity." *Bethlehem Manor Vill., LLC v. City of Bethlehem*, No. 22-5215, 2024 WL 4367922, at *10 (E.D. Pa. Sept. 30, 2024) (citing *E. D.* v. *Sharkey*, 928 F.3d 299, 306 (3d Cir. 2019)), *appeal filed*, No. 24-2925 (3d Cir. Oct. 17, 2024); *see also Plavix Mktg., Sales Pracs. & Prod. Liab. Litig.*, 974 F.3d at 231 (stating that the moving defendant has the burden of showing that a complaint fails to state a claim under Rule 12(b)(6)); *Scotti v. Univ. Corr. Health Care*, No. 19-13981, 2022 WL 4217766, at *11 (D.N.J. Sept. 13, 2022) (stating that qualified immunity is an affirmative defense and the burden of pleading rests with the defendant (citing *Gomez v. Toledo*, 446 U.S. 635, 639 (1980)).

The Moving Defendants fail to meet their burden. Specifically, they do not identify the non-Eighth Amendment claims for which they seek qualified immunity. The Moving Defendants also do not provide any support for their conclusory assertions that the Amended Complaint does not set forth either a prima facie constitutional violation or a violation of clearly established law. For instance, Plaintiff asserts in Count Eight that the Individual Moving Defendants denied his right to be free from retaliation under the First Amendment. (Am. Compl. ¶¶ 177-78.) To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in

22

constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was a substantial or motivating factor for the adverse action. *See Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (per curiam). Plaintiff asserts, *inter alia*, that Bundy had Plaintiff transferred on July 16, 2018, to punish him for filing a grievance and intimidate him from going forward with a lawsuit. (Am. Compl. ¶ 97.) The Moving Defendants do not mention these allegations, whether they adequately state a retaliation claim, or whether the asserted constitutional right was clearly established.

The only specific factual allegations mentioned in the Moving Defendants' qualified immunity discussion evidently implicate Plaintiff's Eighth Amendment claims, despite their "[n]ote" that the Moving Defendants are not seeking qualified immunity for such claims. (ECF No. 49-1 at 26.) According to the Moving Defendants, "no facts were alleged to establish how each of the individual State Defendants knew or were made aware that Plaintiff was required to wear his knee braces at all times such that he would fall after climbing stairs, or were on notice that the milk crate in the shower would collapse if Plaintiff sat on it." (*Id.* at 31.) The Moving Defendants do not indicate how this argument relates to retaliation or other putative non-Eighth Amendment theories of liability.[6] Accordingly, the Court concludes that Individual Moving Defendants fail to show their entitlement to qualified immunity.

---

[6] In fact, in their brief in support of their terminated second motion to dismiss, the Moving Defendants relied on these same assertions as to the Individual Moving Defendants' purported subjective awareness regarding Plaintiff's leg braces and the milk crate as the basis for their argument that they did not violate clearly established law under the Eighth Amendment. (ECF No. 36-1 at 35.)

## IV.    <u>CONCLUSION</u>

For the reason set forth above, and other good cause shown, the Moving Defendants' Third Motion to Dismiss is **GRANTED in part** and **DENIED in part**. The Court **DISMISSES** with prejudice Plaintiff's §1983 and NJCRA claims in Counts One, Two, Three, Five, Seven, Eight, Nine, and Ten against NJDOC and NJSP.   The Court further **DISMISSES** with prejudice Plaintiff's §1983 and NJCRA official-capacity claims for damages in Counts One, Two, Three, Five, Seven, Eight, Nine, and Ten against the Individual Moving Defendants. Plaintiff's ADA and RA individual-capacity claims in Count Three against the Individual Moving Defendants are **DISMISSED** with prejudice.  The Court **DISMISSES** without prejudice the conspiracy claims in Count Five and the intentional infliction of emotional distress claims in Count Six.  The Court also **DISMISSES** without prejudice Plaintiff's Fifth Amendment, Sixth Amendment, and, to the extent they are based on the same conduct implicated in his Eighth Amendment claims, the Fourteenth Amendment substantive due process claims in Count Eight against the Individual Moving Defendants in their official capacities for prospective relief and in their individual capacities.  The Third Motion to Dismiss is **DENIED** in all other respects, and the remaining claims in the Amended Complaint shall proceed.[7]  An appropriate Order follows.

GEORGETTE CASTNER
United States District Judge

Dated: January 22, 2025

---

[7]    The Court further invites Plaintiff file an application for appointment of *pro bono* counsel under 28 U.S.C. § 1915(e)(1).